Edward Sanchez. We'll hear from Mr. Henney's first. Thank you, Chief Judge Elorado. May it please the court. Andre Sanchez's conviction for violating Section 922 G3, which prohibits unlawful users of controlled substances from possessing firearms, is unconstitutional for two independent reasons. First, the statute infringes Sanchez's rights to keep and bear arms under the Second Amendment. And second, the statute is void for vagueness under the Due Process Clause. And this is a straight up challenge de novo. This is not a plain error challenge or anything. I think we talked about this briefly in an oral argument yesterday. I listened in and I heard that. We are on de novo review. He preserved both of these And so this case presents two grounds to reverse Sanchez's conviction, either Second Amendment or due process. And I'd like to start with the Second Amendment challenge. And at the outset, I need to clarify our argument just a little bit after consulting with my client. So Sanchez now stipulates that he was intoxicated with marijuana at the time he possessed a gun in this case. So he is withdrawing his request for a Daniel-style remand. The Second Amendment statutes presented are purely legal and there's no need for further factual development in the district court. Even so, this country simply has no history and tradition of disarming even intoxicated individuals. You're not saying temporarily disarming. You're saying permanently disarming? You could temporarily disarm an intoxicated individual, right? The government hasn't pointed to any statutes from the founding saying that you can. The government's... Seriously, are you saying, I mean, don't you think that would pose a threat at the very moment if someone is intoxicated and they're wielding a weapon or could wield the weapon at any time? So a temporary disarmament if they're presenting with a weapon and they're intoxicated? It might, but, you know, we look at the founding era and the founders drank copious amounts of alcohol and they carried weapons and there's just simply no tradition that the government has pointed to from that era disarming intoxicated individuals. They point to three very... But to give an accurate look at, take an accurate look at the terms, you're going to have to question whether historically in the course of a lawful arrest of a citizen for some violation of law, they could not take their weapon from them. I don't think you're going to find that to be supportable. If you arrest an individual for violating the law, certainly you can take their weapon, but that's not the conduct that 922G3 prohibits. Congress maybe could write that law, but that's not the law we have before us. But basically you're saying that it violates the Second Amendment for a police officer to disarm an individual when he's being arrested for a drug offense. No, I don't think that's quite it. I'm sure you don't, but I'm asking you why it's not. Because when we're considering these Second Amendment challenges, we have to look at what Congress wrote. Congress is the one that wrote these statutes. They put them down on paper. And Congress said that it's illegal to be an unlawful user of a controlled substance in possession of a gun. So we have to look at that conduct, and is that historically... Mr. Davis, I think that my question was more of a friendly question, wasn't it, in light of this further exposition? That you're not talking, in your case, about a temporary disarmament, regardless of whether you would argue for that or not. You're talking about being permanently banned. Is that correct? That is correct. So you're talking about subsequent, so there's no indication that going forward your client would be intoxicated, but they would not be able to have a weapon for the rest of their life. That's what you're here to argue about, isn't it? Not what happens at an instant when a police officer shows up and someone's in an altercation or something with a weapon and a drunk person or an intoxicated person. That's certainly an... Yes. I mean, after this Court's decision in Contreras, we know that 922G3 is a valid predicate that disarms an individual for the rest of their lives under 922G1, and that is certainly not supported by our country's historical tradition. What is the lay of the land with the other circuits on this argument? I believe that the Eighth Circuit is the only circuit that's weighed in in V.C., and they said it's facially constitutional. They recently had a case where they remanded for some further factual development as to whether it was unconstitutional as applied, but they didn't really grapple with this permanent disarmament, and after Daniels... Daniels specifically says that this is a permanent disarmament statute because of the way that it interacts with 922G1, and there's certainly no history of that. I briefly want to address Connolly because Connolly said that there was a tradition of disarming intoxicated individuals, but Connolly is also really internally inconsistent on that point. I've read Connolly probably a dozen times at this point. Well, we have to abide by our... We have a really strict rule of orderliness. You do, but Connolly is dicta because it wasn't necessary to the result. Once the Court found that 922G3 was unconstitutional as applied to Connolly, it should have stopped there. The issue is also not fully debated because Connolly said, I don't need to respond to these intoxicated carry laws because I wasn't intoxicated, and Connolly did exactly what the Supreme Court has cautioned courts not to do in facial challenges. It anticipated a rule of constitutional law that was not an issue in the case, and it articulated a rule that is broader than necessary to decide the case. So even if... And even if Connolly is binding as far as the facial challenge, Daniels says that we are going to look at as-applied challenges on a case-by-case basis as different fact patterns come before us, and Connolly even suggests that the government might be able to look at different evidence, cite new evidence, or reformulate their dangerousness theory. So if the government is not bound, it's seemingly strange that a defendant in the first instance can't come forward and say, the historical evidence does not support disarming me for the rest of my life. Can you remind us of the record on this? Does the record indicate that he was a habitual... Habitually intoxicated? Did the district court make findings of that such that it would be anticipated that he would continue to be intoxicated into the future in perpetuity, anything like that? The record before the district court on the motion to dismiss was that, you know, there was some indication that he was intoxicated at the time, and we are now stipulating to that. But that's not the question. The question is that he had habitually been in the past and that he would continually be intoxicated going into the future in perpetuity, or at least until the... Did the district court make any kind of determinations on that issue? No, Chief Justice. So the issue is, based upon intoxication at one snapshot, can you be permanently disarmed? This is the pure case of that. Is that correct? Or is there something in the facts that's going to trip you up that your friend on the other side is going to mention in a second? So go ahead and tell. In their motion to dismiss, the government also pointed to a few social media posts where, you know, Sanchez may or may not have been, you know, using a legal drug, but we'll, you know, say for the purposes of the motion to dismiss that we'll accept their version of the facts, and they also... He used them on occasion, other occasions? Yes. Did the district court make any findings that he was likely to continue to use them? There are no findings that he was likely to continue using them into the future. No, Chief Judge Elrod. There's no findings like that. Were there any findings even that he was intoxicated at the time? I know you've stipulated to that this morning, but was there anything in the record, or any finding in the record by the district court that he was intoxicated at the time he possessed the gun? Judge Ramirez, I don't think the district court quite got there. There was some, you know, he... I think there was a finding in the order on the motion to dismiss that he had used marijuana around the time of the gun possession, or recently. Without defining what recently was. Yeah. And, you know, that kind of segues a little bit into our vagueness challenge, is that unlawful user is incredibly vague on its face. Courts across the country have tried to give these judicial glosses to save the statute from unconstitutional vagueness, that use has to be, you know, recent. In Connelly and Daniels, the court said that is vague. And there also has to be this, you know, regularity over an extended period of time. And that is also incredibly vague. And, you know, we laid out a list of questions on page 30 in our brief. It's like, when does drug use become regular? How often do you have to use it? What is an extended period of time? I don't know. And, you know, the government doesn't really provide us any guidance for applying the statute. The government's response is kind of, I know it when I see it. But that's really concerning. Because one of the purposes of vagueness is to provide standards for law enforcement. To provide standards for police and prosecutors and judges and juries. Does your stipulation this morning that your client was intoxicated at the time he possessed the weapon foreclose your Second Amendment argument? No, Judge Ramirez. Both because Connelly's discussion of this was dicta. Because it wasn't necessary to the 922G3 point. And because it wasn't fully debated by the parties. And then, in any event, Daniels says that an as-applied challenge, we're going to decide different fact patterns as they come before the court based on party presentation. This is the first case that has come before the court where the defendant said, I, you know, was intoxicated. In both Daniels and Connelly, they said, I don't need to respond to any intoxicated carry analogs because my client wasn't intoxicated. So this court never had to, you know, had a peer party presentation to decide that issue. And I just briefly, while we're on the stipulation, I also want to say that that doesn't do anything to our vagueness claim. The recent C-prong, we had already, you know, in my opening brief, I said, I don't know that he was intoxicated at the time, but at least, you know, we can say that it was recent use. So we already stipulated to that. But we're really here because in order to apply 922G3 to my client, his conduct has to be clearly prohibited by the statute. And— What do you ask us to do? So on the Second Amendment challenge, I would ask the court to find that 922G3 violates the Second Amendment as applied to Sanchez because there's no history and tradition of permanently disarming any individual based on drug use, whether he was intoxicated at the time he possessed a firearm or not. And then on the vagueness claim, as the Supreme Court has said, Johnson and Davis, a vague law is no law at all. So if Sanchez's conduct is not clearly prohibited by the conduct, or his conduct is not clearly prohibited by the statute, the job is to invite Congress to write a clear law. And that's what Justice Gorsuch said in the majority opinion in Davis. And this Court has tried to add some glosses, but I mean, I want to point to just a couple. So in the Supreme Court's recent decision in Williams, or fairly recent, they kind of laid out the standard for vagueness. And they say, is there an indeterminacy of what the underlying fact actually is? And in Williams, the Supreme Court contrasted true-false determinations, on one hand, with subjective judgments that lack statutory definitions, they lack narrowing context, and they lack any settled legal meaning. And we fall right on the side of subjective judgments in this case, because regularity and an extended period of time are incredibly vague concepts, especially with regard to drug use. There's no settled meaning of regular drug use or extended period of time. It leaves people to guess at what those mean, and it means that different people differ in their application of the statute. And that's exactly what, you know, the vagueness doctrine is designed to protect against. Did Connolly, I'm trying to look at Connolly right now, but you've read it probably more recently than I have. Does it deal with vagueness in that? I don't believe it did. Connolly, I don't remember if Connolly raised the vagueness claim. I know Daniels did, and the Court said we're not going to do that. We didn't, they didn't have to reach it in Daniels, but did Connolly? I don't remember, Judge Elwood. I can decide, or I can look at, I think I have the briefing at my table, so I can look. And on that point, I also want to just really quickly hit this point about what the Court's Second Amendment jurisprudence does to the vagueness analysis. Because after Connolly and Daniels, one thing we know is that 922g3 is overbroad. There is at least some conduct in 922g3 that is protected by the Second Amendment. But after Daniels, the line between protected conduct and prohibited conduct under the statute is even more vague, because Daniels left open all of these possible applications of 922g3 that may be constitutional, they may not, and it doesn't provide notice to any defendants. They can't tell whether they may be a mental patient, you know, comparable to a mental patient at the founding. And I think the most concerning aspect of all is that Daniels says the government may be able to reformulate its dangerousness theory in an appropriate case, but a defendant obviously does not have notice of something that the government hasn't even articulated yet. So on either ground, we would ask this Court to reverse Sanchez's  Thank you. Mr. Victor. May it please the Court, Zachary Richter for the United States. Sanchez wrecked a stolen car, violently resisted arrest, and then bragged that his blood test would break the weed scales. The Second Amendment does not protect a right to carry a firearm while violently acting out under the influence of illegal drugs. Sanchez also had fair notice that the statute That's, that's, is that the question? Did he have a right to carry a firearm by acting out using illegal drugs, or does he, can he be banned for the future? That's two different, the permanent disarmament is so different than could he be punished for using a gun at that time. That's right, Chief Judge Elrod. The permanence is a feature of Section 922G1 because he could become a felon. So whether permanence, a permanent ban would be justified would be answered in a case asking whether a defendant can be permanently disarmed under Section 922G1. And this Court didn't quite get there in Contreras. This Court relied on a couple of different traditions, including Contreras's drug use during his possession of the firearm, which is, of course, relevant here. But this Court did not say in Contreras that every application of 922G3 results in an application of 922G1. So that question about permanence would be tested in that sort of case. This case is about... So you think it doesn't raise it? You think this does not raise whether he can be banned from having a firearm? This panel doesn't have to ask whether the permanent ban is consistent with the Second Amendment because 922G3 doesn't impose a permanent ban. That permanent ban comes about because of the operation of a separate statute, and the constitutionality of that permanence can be addressed in that. Well, it's under the same statute, but it's a different part of the same statute. Right. They would be two different convictions. And he has not been charged under Section 922G3. And so what's pertinent under Section 922G3 is whether, in this Court's analysis, in Connolly and in Contreras, whether his intoxication while carrying a loaded firearm allowed his disarmament consistent with the Second Amendment. So there's that tradition that this Court has already recognized in three different cases of disarming the intoxicated. That's Daniels, Contreras, and Connolly. And then there are other traditions as well, including the tradition of disarming the mentally ill. And several courts, including the Eighth Circuit and Vesey, have pointed out that somebody who is acting out violently while intoxicated is akin to a mentally ill person who can be disarmed consistent with our historical tradition. And then there's also the going armed laws that were discussed by the Supreme Court in Okemah, which prohibits somebody from carrying arms while going abroad and terrifying the people. And courts have also pointed out that that tradition of engaging in illegal and dangerous conduct is consistent with someone like Mr. Sanchez, who was acting out violently while he was under the influence of Mayor Warren. Does Mr. Sanchez have a constitutional right to carry a weapon? Today, does he? Can he care and lawfully carry a weapon under the Second Amendment? No, because independently, he has state felony convictions, so he can't carry a weapon. He has since, his conviction in this case, acquired several state felony convictions for which he's currently incarcerated. The prohibition against his carrying a weapon flows from his conviction as a felon of state law. Right, under state law. Now, whether he would also be prohibited under Section 922g1 under federal law, we would probably charge that case, but we haven't charged that case. If he started carrying, if he got all of his, if he got pardoned for all of his state things, you would still charge him under 922g1 if he had a conviction under 922g3? Depending on what happens with 922g1 in this court, we possibly could. But the possibility that that might happen is not the question that this court answers in deciding whether Section 922g3. Why isn't 922g3 vague and overbroad, given, I mean, Connolly itself starts the, you know, the section that says, boiled down, 922g3 is much broader than historical intoxication laws. These laws may address a comparable problem preventing intoxicated individuals from carrying weapons, but they do not impose a comparable burden on the right holder. They pass the why, but not the how. Why isn't even under the reasoning and explanation of Connolly, why isn't there a vagueness and an overbreath problem? So let me take the overbreath first. Overbreath is a separate doctrine under the First Amendment that has never been raised in this case. As to vagueness, the answer is because Sanchez had fair notice. I don't know that that's true, that that hasn't been raised. But anyway, go ahead.  Keep going. So the issue that was raised in this case was due process, and due process requires fair notice. Right. And Sanchez did have fair notice. A person of ordinary intelligence would understand that someone, quote, is an unlawful user of any controlled substance when that person repeatedly advertises his drug use on social media, including in his profile picture, has his friends advertise his drug use on social media, has his family comment on his repeated drug use, is caught using illegal drugs while violating the law, and at that time also has more drugs in his pocket. So that is the standard for due process, is can somebody understand that that conduct falls within the statute. Why isn't it vague, though, under the statutory term useful user captures regular marijuana users, but the temporal nexus is most generally described as vague. It does not specify how recently an individual must use drugs to qualify for the prohibition. That to me, isn't Connolly saying the statute's vague? No, Your Honor, and here's where we get into a question of dicta, because to answer your earlier question, Chief Judge Elrod, Connolly did not raise a vagueness challenge, and it was not discussed in this court. It was never briefed in this court. Right, but they brought it up in the opinion. I'm reading from the opinion where they said it doesn't say how recently it must use, it doesn't, and it, and so that would be that it's vague in at least some of its applications, and so actually it could be facially vague, which would undermine the part of why they facially found it constitutional, but that's another discussion for another day that we can't have. It would have to be our en banc court having. So why is this, why isn't Connolly a really bad case for you rather than a really good case for you? Well, first, because Connolly wasn't asked to address vagueness and didn't have to decide vagueness, so that commentary is dicta. Secondly, Connolly did not address the due process standard for vagueness, which is fair notice under the law. That test was covered by this Patterson, which Connolly did not overrule, and Edwards, which Connolly did not overrule. And in both Patterson and Edwards, this court held that the statute was not unconstitutionally vague as applied to regular drug users. But the government did not establish the contemporaneousness and regularity of the drug use. They might have established the contemporaneously if they stipulate to that, but not the regularity. And that's required too, isn't it, for a Patterson analysis? So yes, regularity or a pattern of use. The court has described those things, has used two different phrases to describe that. Those are not statutory terms. Those are describing the statutory term, user, which courts have held means that somebody is using more than once in a pattern or regularly. The court, the district court didn't make any determinations on that. It did. At page 181 of the record, the district court made a finding that Mr. Sanchez was a regular user. Regular user. And that's based upon what? That's based upon the Social media? His repeated social media posts, including his profile picture, which was him using marijuana. The statements by his family, his use on the day. And other courts have found that that combination of factors can lead to a reasonable inference and did lead to a reasonable inference here that somebody was a regular user of illegal drugs. Keep in mind too that when he said he would break the weed scales, he reflected that he had knowledge of how much marijuana he was using. He's not an inexperienced user. And then in his guilty plea under oath, he admitted both that he was an unlawful user of a controlled substance and that he knew it. And that's at page 297 of the record. So unlawful use doesn't get you there. You have to be a regular, there has to be a regularity about it that would be not vague. So the statutory term is that somebody is an unlawful user of any controlled substance. And courts have explained that what that means is a regularity or a pattern of use, right? And this court has held that that is enough to save the statute from being unconstitutionally vague. So in this instance, the district court did make that finding and the district court could reasonably draw that inference, especially on a Rule 12 pretrial motion. Recall that what the district court was called upon to rule on and the only ruling that Mr. Sanchez has appealed from, in fact, in his plea agreement, he says he's appealing solely from the denial of that pretrial motion. The only thing that the district court was called upon to rule on was whether the indictment should be dismissed so that it could not even proceed to trial. And Rule 12 says that when a court, a district court is only allowed to dismiss an indictment when a trial on the merits would not be helpful in determining that motion. Rule 12 says it can grant the motion only when it can be granted without a trial on the merits. And in Covington, the Supreme Court said that that means that the facts surrounding the offense would be of no assistance in determining whether the defense is applicable. So the district court properly in this Rule 12 pretrial posture denied the motion to dismiss. Now, if Mr. Sanchez had wanted to further develop the facts surrounding the regularity of his drug use and the contemporaneousness of his drug use with his firearm possession, he could have proceeded to trial and developed those facts and tested them. He didn't. He admitted that he was an unlawful user of a controlled substance and pled guilty and decided to forego trial. So at this point, he can't blame the district court for having denied his motion pretrial. But he pled guilty after the court denied the motion to dismiss, correct? That's correct. So what evidence was in the record before the district court regarding the regularity of his use? I saw the government's argument. I saw the reply challenging the facts in the government's response. But what evidence was before the district court upon which it could make these findings? So the government proffered that Mr. Sanchez had videos and photographs on social media repeatedly showing his unlawful drug use. I'm going to interrupt you right there. Proffered. When you say proffered, are you talking about the statements in the response to the motion to dismiss? Or was there independent evidence before the court? That's correct. Those are statements in the response. And those are proper in a Rule 12 posture because the question before the district court there is not what is all the evidence that the government would produce at trial. And it's not to try to characterize the sufficiency of that evidence. The government is not required, as we pointed out in our briefing, to lay out its whole case in response to a Rule 12 argument. The government is supposed to say this case should proceed to trial because these are the facts that we could prove at trial. At least these facts we could prove at trial. But in the reply to that response, the defendant challenged those facts. So how did the district court make its determination regarding these competing facts in a response to the motion to dismiss and a reply? Well, the district court wouldn't have been empowered to necessarily resolve any kind of conflict in the evidence. That would indicate under Rule 12 in the Supreme Court's decision in Covington that the district court had to deny the motion, which it did, because the facts surrounding the regularity and contemporaneousness of Mr. Sanchez's drug use would have come out at trial. So again, we're back to the district court properly denied the Rule 12 motion, which is the only ruling that's on appeal here based on Mr. Sanchez's plea agreement. We haven't really discussed whether Patterson is controlling the 2005 case. And we haven't discussed whether Thomas Jefferson and everybody were operating distilleries and what the tradition was at the founding and whether people were very frequently intoxicated in using weapons at the founding without any punishment. And in fact, it was just a normal course of things. Wasted powder, according to the Connolly opinion. Do you have any comments about the tradition and the history in that regard? Yes, and thank you, Judge Elrod. First, turning to Patterson, it's hard to square Patterson with Connolly, but you don't have to decide between those cases for purposes of the Second Amendment, because under either one, if you look back at Patterson and its analysis of the Second Amendment, or you look at Connolly and its recognition that people could be disarmed while they were intoxicated. That is a dicta statement at the very last line of the opinion after saying, well, it's vague, and it's problematic, and it's because it wasn't done in history, and this person can't be charged. And then at the last thing it says, but there might be other lawful like that. And that's certainly dicta in Connolly. So Connolly, assuming we operate in the Connolly universe, can you help us? Sure. And I have to first push back a little bit on whether that's dicta, because that was — that last statement in the opinion was the basis for Connolly's holding that 922G3 is facially constitutional and that 922D3 is facially constitutional. And the foundation for holding can never be dicta. But it says that there's, you know, invariably constitutional approaches on this. And so — and then it gives a throw-down example, which perhaps is not well thought out, but it does say — it does hold, you're right, that it's facially constitutional, even though it has the whole vagueness discussion, and it's all very interesting. So — And it undergirds the holding it's not dicta. And again, this Court also in Contreras held that there is a tradition of disarming the intoxicated. And that is a plain holding of that case. So we have two holdings on that tradition. But let's talk about the tradition for a second and intoxication. We've identified several founding-era statutes that disarm people who are using — or punish people who are using firearms while they are intoxicated. And the through-line of all those statutes is the risk — and in fact, this is explicitly stated in the New York statute — is the risk that people will use firearms irresponsibly while they're intoxicated. Now, whether — that risk to public safety is that they're going to, you know, alarm somebody about the — a Native American attack, or that they're going to misuse — the point is, the through-line is that people who are intoxicated may misuse firearms. And so there's both the public safety danger that's reflected in those statutes and other — and of many different varieties. And then you also see that the states around the time of the founding are detaining militia members who are intoxicated. And so you see that through-line of a risk from people who are carrying firearms while intoxicated. And then in the post-Civil War statutes, you see that states have explicitly prohibited carrying while intoxicated. And that entire through-line is important because, remember, what we're looking for under Rahimi is — and Bruin — is not a historical twin. It is the principles underpinning our regulatory tradition. And the principles that those statutes embody are that somebody who is carrying a firearm while intoxicated is a danger and can be disarmed during that period. That's what this Court has identified repeatedly in Contreras and Connolly and in Daniels. And I'd also like to point out that all of the statutory traditions here are taken together, right? So you have not only the tradition of disarming the intoxicated, but also the tradition of disarming the mentally ill, the tradition of illegal and dangerous conduct while carrying a firearm. And all of those bundled together are what this Court looks at under Rahimi in assessing the Second Amendment and whether we're consistent with historical tradition. And I hope I've answered the questions you've raised, Chief Judge Elrod. I'm happy to answer anything further. But if there's nothing further, then I will simply urge this Court to affirm the judgment of the District Court. Thank you. I just briefly want to address Second Amendment. The government has still not shown any tradition of permanently disarming someone that was intoxicated. He says that you have to have that in a G1 case. I don't think that's right. I think right now, because of this conviction, Sanchez is disarmed for the rest of his life or he will face more convictions. The founding-era statutes that the government just cited, Connolly said those are inapposite. They are not relevant. The post-Civil War come too late. Connolly said those missed the mark by the wide margin. I want to go quickly to the vagueness. And, Chief Judge Elrod, you raised overbreadth. In our brief, we said that we cited cases that when a statute threatens to inhibit the exercise of constitutionally protected rights, the vagueness concerns are elevated there. And that was Cullati, a Supreme Court case that was about abortion that was not about free speech. Patterson and Edwards were both as-applied challenges by defendants who immediately after being arrested, under Miranda rights, admitted to regularly using marijuana for years. So those are not binding here on Sanchez. I want to talk a little bit about the district court's finding that Sanchez was a regular user. The issue here is that regular user is vague. Some people might say that these Facebook posts and his grandmother's talking about him recently using drugs, some people might think that that's regular. Others might not. But the point of the vagueness doctrine is to provide standards for the prosecutor, for the police, for judges, and for juries. And that's lacking here. Well, should we remand the case to the district court to clarify? No. This statute is vague on its face. I mean, this statute is vague. The argument I hear from the government on regularity and over an extended period of time is I know it when I see it. And that is not a standard that we can apply to a criminal statute. You know, in his plea agreement, I just want to point out at page 294, he preserved the right to appeal the district court's vagueness challenge. And finally, Rule 12 is no bar here. The government hasn't cited a single case that says that a district court cannot consider a vagueness challenge on a Rule 12 motion. And indeed, again, one of the important aspects of vagueness, and the Supreme Court has actually said this is the most important aspect of vagueness, is to provide standards for prosecutors, for judges, for juries. So a Rule 12 motion makes imminent sense. It tells the government, please tell us what evidence you have that this vague statute applies to my client, because I don't want to go to trial in the face of a vague statute that doesn't apply to me. So that makes sense. The problem that seems a difficulty here is that, assuming, Arguindo, we were to agree with you that it's a vague statute, we have these cases upholding it facially. And so what do we do with that? I don't—upholding it facially on Second Amendment grounds. But if the statute is vague as applied to Sanchez, Johnson and Davis and DeMaio are clear that the remedy is a vague statute, vague law is no law at all. Invite Congress to try again. And I admit that there are some— So are you saying that the field is absolutely clear for us to rule on this in the first instance and we're not tripped up by Patterson and all of these other cases on this topic, on the vagueness? Absolutely not. Patterson and Edwards rejected as-applied challenges on much different facts. And Johnson has a really—go ahead, Judge Ramirez. Thank you. Doesn't Edwards say that due process—that when the due process vagueness challenge doesn't involve the First Amendment, the court's review is as-applied? Aren't we limited to an as-applied review here? Johnson and Davis, the recent Supreme Court cases that post-date Patterson, make it clear that—and Johnson is very specific about this and it talks about some 1920s cases, Cohen's Grocery. Even if there is some conduct at the heart that it can clearly apply to, if a statute is vague as applied to somebody else, then the statute is void on its face. We invite Congress to try again. So just because in a few cases there's a core that maybe if you admit immediately after being Mirandized that you regularly use marijuana and you've done it over an extended period of time, just because there's a core that fits doesn't mean it's constitutional on its face. You have to strike the whole thing down. Thank you. Thank you. We have your argument. We appreciate both of your arguments today.